12 CIV 5599

JUDGE CARTER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

CONTINENTAL INDUSTRIES GROUP, INC.,    }    2012 Civ._____ (_____)
                                       }
                        Plaintiff,     }
                                       }    **COMPLAINT**
        -against-                      }
                                       }    **JURY TRIAL DEMANDED**
                                       }
FTS INTERNATIONAL, INC.(f/k/a Frac Tech }
Services, LLC),                        }
                        Defendant.     }

------------------------------------------------------- x

        Plaintiff, Continental Industries Group, Inc. ("Plaintiff" or "CIG"), by its attorneys,

LeClairRyan, A Professional Corporation, as and for its Complaint against Defendant, FTS

International, Inc. (f/k/a Frac Tech Services, LLC) ("Defendant" or "FTS"), states as follows:

## NATURE OF THIS ACTION

        1.      This action seeks damages arising from Defendant's failure to satisfy its

obligation to purchase certain goods that it ordered from Plaintiff. CIG agreed to sell, and FTS

agreed to purchase, twenty containers of guar gum, an agriculturally based product used in the

oil and gas industry, for approximately $9.8 million.  The parties reached agreement on all terms

of the sale, and FTS confirmed its agreement to purchase the guar gum under those terms on

several occasions (the "Agreement").  To fulfill its obligations under the Agreement, CIG

purchased, or had its supplier purchase, guar seeds or splits from one or more suppliers in India;

processed the guar according to FTS's specifications; provided samples to FTS for testing; and

1

arranged for shipment of the finished product from the manufacturers in India to FTS's warehouse in Oklahoma. After 25% of the guar had arrived in the U.S., 50% was on ships to the U.S., and the remaining 25% was about to be shipped from India to FTS in the U.S., FTS reneged on its obligations under the Agreement, citing its belief that it could purchase guar from another supplier for a cheaper price. Thus, CIG was left with product that was manufactured according to FTS's specifications and thus cannot be sold without further processing, or for the amount originally agreed upon. By this action, CIG seeks damages for the losses that it has suffered as a result of this breach of the Agreement and CIG's reasonable reliance on FTS's promise to purchase the guar gum.

## THE PARTIES

2.     Plaintiff, CIG, is a New York corporation with its headquarters and principal place of business at 733 Third Avenue, New York, New York 10017. CIG is a trading and distribution company active in the field of petrochemicals, industrial chemicals, plastic resins, and guar, and conducts business worldwide.

3.     On information and belief, Defendant, FTS, is a Texas corporation with its headquarters and principal place of business at 777 Main Street, Fort Worth, Texas 76102. Also on information and belief, FTS is a provider of well stimulation services for the oil and gas industry, commonly known as "fracking."

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28

2

10177382-1

U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      This Court has jurisdiction over the Defendant pursuant to Sections 301 and 302 of the New York Civil Practice Law and Rules in that this action arose out of the Defendant's transaction of business in the State of New York, and, on information and belief, Defendant is present and regularly does business in the State of New York.

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to the claim occurred in this District.

## BACKGROUND

7.      The business relationship between the parties started in or about 2011.  At that time, the parties entered into a long-term supply contract pursuant to which CIG would provide a supply of guar hydrating gum and derivatives of guar gum to FTS over a period of several years at fluctuating prices derived from the market (the "Supply Contract").   In conjunction with its entry into the Supply Contract, CIG entered into a joint venture with an Indian partner to construct a factory in India that would be used to process guar seeds, and planned to sell the output of this factory to FTS pursuant to the terms of the Supply Contract.  Delivery of guar to FTS under the Supply Contract was expected to begin when the factory became operational.

8.      Guar is an agricultural product and, on information and belief, approximately 85% of the world's supply of guar is grown in India.  Guar has a number of uses, including

3

agricultural applications (as food for livestock), food applications, and industrial applications. One common industrial application of guar is the production of guar gum, which can be used in hydraulic fracturing, commonly known as "fracking," a process utilized to release petroleum, natural gas, or other substances for extraction.

9.      On information and belief, FTS's business involves, inter alia, the provision of fracking services to customers in the petroleum and natural gas industries, and as a result, FTS has an interest in using guar gum in connection with these activities.

10.      On information and belief, because guar gum is derived from a naturally occurring agricultural product, it is perceived to be an environmentally sound component of the fracking process and therefore the interest of the energy industry in using guar gum in this process, particularly for the extraction of shale gas, has recently increased.

Meeting in New York and Discussion of a Separate Sale of Guar

11.      On or about April 6, 2012, representatives of the parties met in New York City to discuss the status of the Supply Contract (the "New York Meeting").

12.      During the New York Meeting, the representatives of FTS asked CIG about the current market price of guar seeds and the availability of guar for sale to FTS.  The FTS representatives informed CIG, among other things, that FTS had recently been unable to source adequate supplies of guar to meet FTS's requirements and that FTS had had difficulty with potential suppliers, who were demanding what FTS claimed were unreasonable payment terms.

4

13. On information and belief, at the time of the New York Meeting, world-wide supplies of guar seeds were low due to heavy demand. As a result, the market price of guar was quite high at that time.

14. At the New York Meeting, CIG informed the representatives of FTS that CIG could immediately source significant quantities of guar that could be processed and sold to FTS to meet FTS's immediate needs. As a result, FTS indicated at the New York Meeting that it wished to purchase guar from CIG, and immediately ordered ten containers of guar gum that would contain approximately 400,000 pounds of product, ultimately agreeing to a price of $12.18 per pound, or $4,872,000.00, for June delivery. Subsequently, FTS ordered an additional ten containers of guar gum from CIG, this time agreeing to pay $12.42 per pound, or $4,968,000 for the product, for July-August delivery.

FTS Confirms the Agreement to Purchase the Guar Gum

15. In connection with the sale, the parties agreed that, prior to shipment of the guar gum, CIG would provide samples of the product to FTS for FTS's approval.

16. On April 23, 2012, Chad Abbott, the FTS plant manager in Oklahoma, confirmed in writing FTS's decision to purchase the twenty containers of guar gum, at the pricing previously agreed upon by the parties, stating "I will purchase the 20 containers discussed based on previous price quotation and no prepayment." Following receipt of this email, CIG confirmed, inter alia, that payment would be made two days after delivery.

5

17.     Subsequently, CIG sent five pre-shipment samples of the processed guar gum to FTS for testing.  FTS approved the samples, stating in a May 1, 2012 email that the samples "passed all tests."

18.     Upon receiving confirmation that FTS had approved the samples of the guar gum that were provided, CIG instructed the factory in India to complete the manufacturing process and to prepare five containers of guar gum for immediate shipment.  Those containers were shipped and arrived in the United States in July.

FTS Approves Additional Shipments of Guar Gum

19.     In late April, 2012, CIG sent additional samples to FTS for testing and approval. In May 2012, FTS raised concerns about some of the samples.

20.     On June 4, 2012, representatives of CIG met with Mr. Abbott and other representatives of FTS and discussed the recent test results.  The representatives of FTS agreed at that time that FTS would accept all of the remaining guar at the prices agreed upon.  Mr. Abbott subsequently confirmed that agreement in a June 4 email message to CIG, wherein he said: "Per our conversation I am approving the attached pre-shipment samples for purchase."

21.     Having again received confirmation from FTS that FTS wanted to take delivery of the guar gum, CIG made arrangements to have the remaining guar gum prepared by the factory for shipment from India to FTS's facility in Chickasha, Oklahoma.

22.     As a result of the above, the twenty containers of guar gum purchased by FTS

6

pursuant to the Agreement have either arrived in the United States, are on the water, or have been manufactured.

FTS Purports to Cancel the Agreement and Refuses to Take Delivery of Guar

23.     On June 6, 2012, two days after re-confirming FTS's agreement to purchase the guar gum, Mr. Abbott sent another e-mail to CIG, stating as follows:  "I want to push/cancel all outstanding POs (including 15 we discussed yesterday)?  I received a quote of $8.50/lb from a reputable Indian supplier for August delivery … I can't pay you $11-$12 for the same delivery dates."

24.     Subsequent to the receipt of the aforementioned e-mail, a representative of CIG informed FTS that, as a result of the repeated written confirmations by FTS that it wanted to take delivery of the product that FTS had purchased, CIG had already staged and moved the containers of the product to rail.  He also noted that the orders could not be canceled at that time, especially because of price.

25.     Upon receiving the aforementioned message from CIG, Mr. Abbott responded by informing CIG that not only were the orders "canceled" but any order that already had been shipped would be rejected.

26.     On information and belief, FTS attempted to cancel the Agreement solely because the market price had gone down and FTS believed that it could obtain guar gum from other suppliers at a less expensive price than it had agreed to pay CIG.

7

CIG Suffers Injury as a Result of FTS's Breach of the Agreement

27.     At the time that FTS informed CIG that it purportedly was "canceling" the Agreement, at least 75% of the product was in transit to FTS and the rest had been manufactured in accordance with FTS's specifications.

28.     Because the guar gum that had been staged for shipment to FTS had been manufactured in accordance with FTS's specifications, it could not be sold to any other customer without alteration.  Moreover, from the time the order was originally placed in April through the date when FTS announced it would not accept the shipment, the market price for guar had gone down.  As a result, CIG will not be able to realize the full contract price in the market that FTS had agreed to pay.

29.     As a result of FTS's refusal to fulfill its obligation under the Agreement, CIG will be injured in an amount that is no less than $3 million.

## AS AND FOR A FIRST CLAIM

(Breach of Contract)

30.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 29 of this Complaint as if set forth at length herein.

31.     In April 2012, the parties entered into a binding contract for the sale of twenty containers of guar gum by CIG to FTS for $ 9.840,000.

32.     The Agreement is valid and enforceable, and CIG performed all of its obligations

10177382-1

under the Agreement.

33.     By purporting to terminate the Agreement and refusing to accept delivery of, or to pay for, the guar gum, FTS breached the Agreement.

34.     CIG has suffered damages as direct a result of FTS's breach of the Agreement in an amount to be determined at trial, which is no less than $3 million.

### AS AND FOR A SECOND CLAIM

(Promissory Estoppel)

35.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 34 of this Complaint as if set forth at length herein.

36.     FTS made an unambiguous promise to purchase twenty containers of guar gum from CIG at specific prices.

37.     CIG reasonably relied on FTS's promise to purchase twenty containers of guar gum at those prices, and took the steps necessary to fill the order; to wit, purchasing guar seeds, making arrangement for the guar seeds to be processed in accordance with FTS's specifications, arranging for shipment of the finished containers to FTS's facility in Oklahoma, and shipping several containers of the guar gum to the United States.

38.     CIG has been injured as a result of its reliance, in an amount to be determined at trial, which is no less than $3,000,000.

9

## JURY DEMAND

Plaintiff hereby demands trial by jury of this action.

WHEREFORE, Plaintiff demands that judgment be entered in this action in favor of Plaintiff and against Defendant on each of its causes of action in an amount to be determined at trial, which is no less than $3 million, that it be awarded interest, its costs and its attorneys' fees relating to this action, and that it be awarded such other and further relief as is just and proper.

Dated: New York, New York
       July 20, 2012

LeClairRyan, A Professional Corporation

By: _____
             Thomas E. Butler
E-mail: Thomas.Butler@leclairryan.com

             Nathan A. Goldberg
E-mail: Nathan.Goldberg@leclairryan.com

885 Third Avenue
New York, New York 10022
(212) 697-6555
*Attorneys for Plaintiff*
*CONTINENTAL INDUSTRIES GROUP, INC.*

10

10177382-1